Richard A. Cummings, ISB No. 1815
960 South Broadway Avenue, Suite 315
P.O. Box 1545
Boise, Idaho  83701
Phone: (208) 367-0722
Fax: (208) 367-0892
Email:  rcummings@cummingslawidaho.com
Attorney for Plaintiff

# IN THE UNITED STATES FEDERAL DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IDAHO WASTE SERVICES, INC, an Idaho Corporation,<br><br>           Plaintiff,<br><br>     vs.<br><br>PROJECT DELIVERY GROUP, LLC, an Oregon limited Liability Company, KEITH WHISENHUNT, an individual, ands LEE BRENNAN, an individual,<br><br>           Defendants. | Case No.:<br><br>COMPLAINT<br><br>(Jury Trial Demanded) |

Plaintiff, Idaho Waste Services, Inc., ("IWS"), for its complaint against Defendants alleges and states as follows:

**JURISDICTION**

**1.** This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. section 1332.  There is complete diversity of citizenship between Plaintiff and Defendants.  The amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs.

/ / /

/ / /

COMPLAINT - 1

## VENUE

**2.** These claims arose in the Counties of Elmore and Ada, State of Idaho, making venue appropriate in the United States Court for the District of Idaho, under 28 U.S.C. Section 1391(b).

## PARTIES

**3.** Plaintiff Idaho Waste Services, Inc., ("IWS"), is an Idaho corporation.

**4.** Defendant Project Delivery Group, LLC (hereinafter "PDG") is an Oregon Limited Liability Company, do business in the State of Idaho.

**5.** Defendant Keith Whisenhunt (hereinafter "Whisenhunt") is an individual and citizen of the State of Oregon. Whisenhunt is the owner and managing member of PDG. All act and conduct attributable to Whisenhunt in this Complaint were under taken within the course and scope of his association and employment with PDG, and were sanctioned, ratified or adopted by PDG as part of Whisenhunt's actual, apparent or implied authority, or were Whisenhunt's individual and unilateral acts.

**6.** Defendant Lee Brennan (hereinafter "Brennan") is an individual and citizen of the State of Oregon. Brennan is employed by PDG as a Professional Engineer. All act and conduct attributable to Brennan in this Complaint were under taken within the course and scope of his association and employment with PDG, and were sanctioned, ratified or adopted by PDG as part of Brennan's actual, apparent or implied authority, or were Brennan's individual and unilateral acts.

## FACTS COMMON TO ALL CAUSES OF ACTION

**7.** On or about May 25, 2018 a judgment of foreclosure was entered in Elmore County District Court Case No. CV-2016-558, against *Idaho Waste Systems, Inc., et al.*, for the property described as follows:

> Township 2 South, Range 5 East, Boise Meridian, Elmore County, Idaho
> Section 7: Southeast ¼
> Section 18: Northeast ¼ and Northwest ¼

COMPLAINT - 2

Township 2 South, Range 4 East, Boise Meridian, Elmore County, Idaho
Section 12: Northeast ¼

**8.** Thereafter the Elmore County Sheriff, after giving due public notice of such sale, as required by the laws of the State of Idaho and as ordered by the court, sold the premises described in the judgment and mortgage on October 30, 2018, at 10:00 a.m. on the Front Steps of the Elmore County Courthouse to IDAHO WASTE SERVICES, INC., (Assignee of the foreclosing creditor) together with its successors and assigns.

**9.** Pursuant to such sale the Elmore County Sheriff issued to Plaintiff a certificate of sale dated October 30, 2018, and filed for recording with Elmore County, Idaho, on November 8, 2018, Instrument No. 469491.

**10.** On or about October 30, 2019, all time for redemption of the premises had expired, no redemption from such sale has been made, and therefore the Elmore County Sheriff, in order to carry into effect the above-described sale, and in compliance with the laws of the State of Idaho, did grant and convey to Plaintiff the real property described in Paragraph 7 above, together with all the appurtenances and improvements to such property.

**11.**. Following the foreclosure process described in Paragraphs 7 through 10 hereinabove, Plaintiff owned and operated the commercially licensed Federal Subtitle D landfill located in Elmore County Idaho, commonly known as the Simco Road Regional Landfill (SRRL). SRRL originally opened in 1999 and is permitted and regulated by the Idaho Department of Environmental Quality ("IDEQ") and the Central District Health Department of Elmore County, Idaho.

**12**. Following its acquisition of the landfill on or about October 30, 2019, Plaintiff continuously employed Project Delivery Group, LLC of Salem, Oregon, together with its

COMPLAINT - 3

Professional Engineers, namely, Keith Whisenhunt and Lee Brennan, to provide certain Professional Engineering Services, including but not limited to:

    a.    Design, construction, permitting and operation of both (1) existing available air space; and (2) new cell capacity/air space for the landfill;

    b.    Construction contract administration and management of new Cell capacity including evaluation of sub-contractor and vendor bids, negotiating contracts, and selection and oversight of sub-contractor work;

    c.    Operational and Environmental consulting and recommendations;

    d.    Design, construction, permitting and operation of new leachate Pumping and Leak Detection Systems;

    e.    Monitoring well Installation; ground water monitoring, and procuring and coordinating laboratory testing;

    f.    Construction and Topographic surveys;

    g.    Consulting and Assisting in State and Federal regulatory compliance;

    h.    Updating and amending the facility's Operation Plan; and

    i.    Calculating available and remaining cell capacity and air space.

**13.**    Project Delivery Group, LLC of Salem, Oregon, together with its Professional Engineers, namely, Keith Whisenhunt and Lee Brennan, held themselves out as engineering professionals with specialized expertise in design and construction of landfill facilities including all matters referenced in Paragraph 12 above.

**14.**    Idaho Waste Services, Inc., chose Project Delivery Group, LLC and its Professional Engineers, Keith Whisenhunt and Lee Brennan based upon their representations regarding their experience in designing, building and operation of landfill facilities.

**15.** Idaho Waste Services, Inc., ordinarily and reasonably relied on the expertise of Project Delivery Group LLC and its Professional Engineers, Keith Whisenhunt and Lee Brennan

**16**. On or about August 1, 2020, Plaintiff completed a sale of the landfill to an entity known as CWT and its designated 'affiliate" IRWS, which from August 1, 2020 have owned and operated the landfill.  As part of the final terms and conditions of the purchase and sale of the facility, IRWS promised, through separate promissory note and agreement, to pay to IWS (post closing) the sum of $50,000.00 for and in consideration of other specified items of equipment owned by IWS and not part of the original contract.

**17**. The purchase price of the landfill was determined according to industry practices, giving significant consideration to "available airspace" which is the critical inventory effecting short and long term value and  profitability.

**18**. Following its acquisition of the landfill facility, IRWS continued the employment of Defendants, including PDG, Keith Whisenhunt and Lee Brennan.  IRWS also named Lee Brennan as its "Operations manager."

**19**. IRWS is managed by its "CEO" John Crigler (hereinafter "Crigler").  Crigler has a history of Chapter 7 bankruptcies and together with other principals of IRWS and its affiliated entities are being sued in Federal District Court, for the District of Idaho for Federal Securities Fraud and related claims.

**20**. From the date that IRWS took possession and control of the landfill, IRWS and its principals together with Defendants have in combination engaged in a wrongful and abusive course of conduct against IWS including the intentional dissemination of false information to government authorities and agencies stating that IWS violated environmental laws regarding the disposal of asbestos containing materials ("ACM") and tire disposal.  This disseminated information includes but is not limited to:

**a.** On or about October 23, 2020, in certain correspondence from IRWS through it's CEO Crigler, and directed to the Idaho Department of Environmental Quality, quoted Defendant Brennan and PDG as follows:

"Mr. Lee Brennan, our current Operations Manager, informed us that PDG (who was on site prior to Cell2A's installation) it is without question that this material was

COMPLAINT - 5

*placed by the former Operations Manager Tom Knight (and possibly the former Owner as well, both of which are no longer involved with this operation) without definitively determining where the anchor trench was located.  Based on follow up employee testimony, it appears that the former Operations Manager was unable to locate the trench and knowingly placed the ACM in this location to be delt with "at some time in the future."*

Defendants do not know who placed asbestos containing material ("ACM") at the location where it was allegedly found.  With regard to the purported *"employee testimony"* none of the current staff at the landfill were employed there during the time that any disposal activity was occurring at the alleged location so there could be no "testimony" as stated by Defendants.

    **b.**    In a letter directed to Matthew Beeter, Solid Waste Program Manger at the Idaho Department of Environmental quality and signed by Mr. Whisenhunt and Mr. Brennan on October 29, 2020 stated:

    **b1.**    In the last paragraph on page 3, Mr. Whisenhunt states: "*However, with the lack of documentation and mapping of ACM waste disposal that has occurred during previous ownership of the SRRL site, waste excavation in areas overbuilt may not be feasible or practical.*"

Mr. Whisenhunt knows that because the foreclosed out owner (Idaho Waste Systems) did not record specific locations of ACM waste disposal in Cell 1, the entire footprint of Cell 1 has been designated as a ACM location.  This was done under Idaho Waste Services ownership and operations to bring Cell 1 into IDEQ compliance and Mr. Whisenhunt knows this and the assertion or inuendo that there is a "lack of documentation" or "mapping" regarding ACM location in Cell 2A is false.

    **b2.**    On page 4 in paragraph 3, Mr. Whisenhunt states: *"Gaia staff encountered a large cell of ACM inferred to be located just outside of the liner . . ."*

COMPLAINT - 6

This statement is false. The word "inferred" is intended to be misleading. From an engineering perspective the ACM is either on or off the liner. It is intended by Mr. Whisenhunt to disparage Idaho Waste Services reputation in management of the landfill.

**b3.** Also in paragraph 4, Mr. Whisenhunt states: *"In discussion with landfill staff that was working at SRRL during IWS ownership, Tom Knight reportedly gave up trying to find the edge of the liner and placed the ACM materials without knowing where the Cell 1 liner was in the area where the ACM was discovered."*

This statement is false. No current employee worked for Tom Knight or Idaho Waste Services at the time when any materials were being deposited into Cell 1.

**b4**.   On page 6 in the second paragraph, Mr. Whisenhunt states: *"Since the exact whereabouts of ACM in Cells 1 and 2A were not consistently logged during IWS's operation of the landfill, all of Cell 1 has been identified as needing to follow the requirements of 40 CFR Part 61 . . ."*

This statement is false. Defendants know that the foreclosed out company Idaho Waste Systems did not document ACM deposited waste into Cell 1 and it was specifically Idaho Waste Services that worked with IDEQ to classify the entirety of Cell 1 as an ACM location to bring the landfill into compliance with State and Federal regulations. Defendant Whisenhunt's statement that ACM location has not been properly logged in Cell 2A is intentionally false.

**c.**   In other correspondence directed to Matthew Beeter at the Idaho

COMPLAINT - 7

Department of Environmental Quality, signed by Mr. Crigler and Lee Breean "P.E." for Project Delivery Group, as follows:

    **c1.**    Beginning on page 3 paragraph 2 states: *". . . .drawing from statements made by SRRL staff that have transitioned through the Site's ownership change, we have discovered that previous management directed and provided oversight of the placement of waste and access road development involving: a. Lack of knowledge and experience resulting in the incorrect demarcation of the location and extent of the lined edge of the waste cells; b. Failure to adhere to standard industry practices and regulatory requirements for placement, compaction, and/cover of the waste materials placed; c. potential over-build, and steeper-than-designed slopes on the northerly and easterly finish slope areas, lacking necessary survey control and checking during finished slope development; d. Failure to design and construct interim access roads with proper exterior slopes, lack of engineering design or controls, and insufficient all-weather access (i.e., too steep, lack stormwater control or management, etc.); e. Failure to construct the final access road within the designed alignment, grade, or cross-section, of which this access road is necessary to extend to the current planned future upper surfaces of the landfill, and should have already been professionally designed and constructed; f. Lacking sufficient documentation and mapping of ACM elevation and placement; g. Violation of former Consent Orders with IDEQ by the illegal dumping and final disposal of whole (unprocessed) passenger and truck tires into Cells 1 and 2A, when shredding of the tires prior to disposal was required by the IDEQ (estimate that 30 to 40 percent of Cell 2A volume is composed of whole tire disposal); h. Identified liquid waste disposal in unlined "mixing pits" in the landfill being located inside and outside of the lined cell area of SRRL, not approved by IDEQ; i. Complete lack of required wayfinding, traffic control, and hazard warning signage, and ACM disposal area demarcation; and j. Inconsistent soil cover placement (i.e., either significantly inadequate final cover or over extensive interim cover) on the inactive portions of the Landfill and overlying and adjacent to the lined edges of the landfill that will have future adjoining lined cell development.*

    This statement is false. Defendants know that no information exists that would support the allegations in this paragraph or the assertion that Idaho Waste Services did not operate the facility in full compliance with industry standards and environmental regulations.

    **c2**.    the letter further states: *Sufficient documentation has been provided to IRWS legal counsel which confirms the illegal dumping of unprocessed or whole tires into the Landfill. As a protective measure, IRWS has amended its current lawsuit against Idaho Waste Services, Inc., to add counterclaims concerning the various*

*environmental irregularities involving solid waste and ACM placement and disposal outside of the cell or on top of the edge of the liner that are to attached to future adjacent cells; unprocessed tire disposal; untreated liquid waste disposal; and other documented misrepresentations by Idaho Waste Services, Inc., and its owner pertaining to the operation and management of SRRL."*

This statement is false.  Defendants do not have any information supporting the content of this paragraph.

**c3**.    the letter states:  *"Since the acquisition of the SRRL on July 27, 2020, IRWS discovered missing records, specifically concerning (but not limited to): tire acceptance/rejection; special or hazardous waste rejection; tire (whole or processed) disposal in the landfill; liquid waste acceptance, rejection, and solidification; employee training; methane monitoring; and ACM disposal location documentation."*

Defendants  know Idaho Waste Services and its management maintained good records and operated the landfill in full compliance with all state and federal regulations.

**C4.**    On page 6 and in the 3rd paragraph the letter states:  *"For this purpose, and for the reasons outlined above, IRWS seeks to work with the IDEQ to determine an appropriate extension of time to allow for proper discovery, identification, and remediation of further issues of concern due to the mismanagement of Idaho Waste Services, Inc., yet to be discovered."*

This letter is signed by Mr. Brennan, PE on behalf of himself and Project Delivery Group , LLC which is Mr. Whisenhunt's company.  Mr. Brennan and Mr. Whisenhunt during their employment with Idaho Waste Services, Inc., (who they now publicly criticize) have direct knowledge of the operational history of this facility and the high level of competent management and performance of Idaho Waste Services, Inc., during its ownership (following acquiring the facility through foreclosure),  including the operation of the landfill in full compliance with all state and federal regulations.  By

publishing these false and unsubstantiated criticisms with a public agency, Mr. Brennan and Mr. Whisenhunt are lending their "professional opinions" and support to the current owner's "lawsuit" against PDG's prior customer Idaho Waste Services, Inc.

21.     Immediately following the closing of the purchase and sale transaction set forth in Paragraph 16 herein, IRWS through Crigler breached the separate contractual obligation and promissory note to pay IWS the sum of $50,00.00 for additional equipment, while maintaining possession of said equipment, and then sued IWS for "undisclosed" environmental regulatory violations, specifically alleging mismanagement of ACM and waste tire disposal, mirroring the false allegations made by Defendants in Paragraph 20 hereinabove.

22.     As part of the litigation pursued by IRWS and Crigler set forth in Paragraph 21 above, Crigler in a sworn declaration has stated:  *"IRWS has hired Project Delivery Group, LLC ("PDG") as an expert to advise it in preparation for trial"* and *"Brennan and Whisenhunt are the specific PDG employees advising IRWS for this case."*

### FIRST CAUSE OF ACTION

### (Tortious Interference with Business Relationship/Expectancy)

23.     Plaintiff alleges paragraphs 1 through 22 and by this reference incorporates these paragraphs as if set forth verbatim.

24.     Plaintiff had established a financial relationship with IRWS for the sale of Plaintiff's landfill assets, including the contract set forth in Paragraph 16 herein.

25.     By and through Defendants continuing professional association and employment with IRWS, all Defendants have knowledge on the contractual relationships between Plaintiff and IRWS.

**26.** Defendants intentionally, with improper purpose and through the use of improper means, interfered with Plaintiff's financial relationship with IRWS through the following non-exclusive list of particulars:

a. By communicating in writing and otherwise to IRWS false statements regarding Plaintiff's operation of the landfill including environmental and regulatory compliance as set forth herein, and in direct violation of professional engineers duties of competence, truthfulness, honesty, confidentiality and avoidance of conflicts, owed by Defendants to their prior client and employer IWS; and

b. By communicating in writing and otherwise to certain regulatory agencies, including Idaho Department of Environmental Quality and Central District Health false statements regarding Plaintiff's regulatory operation of the landfill as set forth herein, and in direct violation of professional engineers duties of competence, truthfulness, honesty, confidentiality and avoidance of conflicts, owed by Defendants to their prior client and employer IWS;

**27**. The conduct of the Defendants as set forth herein was intentional and caused, promoted and supported the breach of IRWS of the contractual obligations it owed to IWS, and has formed the basis of frivolous legal claims asserted by IRWS against IWS, all of which Defendants knew or should have known would be the necessary consequence of Defendants actions.

**28**. IRWS has in direct proximity and correlation to the claims it is asserting as set forth in Paragraph 21, identified Defendants as its sole "experts" in claim consulting and advising.

29. As a direct and proximate cause of Defendants wrongful conduct, IWS has incurred damages in an amount to be proven at the time of trial, including but not limited to economic and monetary losses, lost opportunities and litigation expenses.

economic and monetary losses, lost opportunities and litigation expenses.

///

///

///

## SECOND CAUSE OF ACTION

### (Negligence)

30. Plaintiff alleges paragraphs 1 through 29 and by this reference incorporates these paragraphs as if set forth verbatim.

31. During the period of IWS's ownership of the landfill and IWS's employment of Defendants for the professional services set forth in Paragraph 12 hereinabove, Defendants represented to Plaintiff that the landfill, specifically Cell 1 and Cell 2A (2A was designed by Defendants) were rapidly running out of air space (less than 1 year surplus) and consequently Defendants promoted the idea that IWS employ Defendants to design, permit and over see construction of Cell 2B. The Defendants proposed contract for their services associated with development of Cell 2B exceeded 500,000.00.

32. In correspondence dated October 29, 2020, on PDG letterhead and directed to IDEQ ( following the closure of the Purchase and Sale agreement ) Defendant Whisenhunt states: *"Using an average annual inflow of 180,000 ton per year, and a conservative in-situ density (including daily cover) of 1,300lbs/cy (0.65 tons/cy) equates to a remaining cell capacity of over 3 years."*

COMPLAINT - 12

**33.** The statement made in Paragraph 32 is in direct conflict with previous calculations and express opinions made by Defendants to IWS prior to negotiating and closing the transaction with IRWS.

**34.** The limited air space opinion provided by Defendants to IWS prior to negotiating the terms of the transaction with IRWS, significantly and negatively impacted the market value of the landfill.

**35.** If Defendant's had rendered an opinion similar to the "3 year" assessment prior to IWS's negotiating the purchase and sale transaction between IWS and IRWS, the value of the landfill would have been increased by approximately 3 million dollars exclusive of discounts attributable to the immediate need for the purchaser (IRWS) to spend in excess of $500,000.00 for professional engineering services as set forth in paragraph 31, or in the alternative, IWS would not have sold the landfill and would have continued to operate it profitably into the future.

**36.** As a direct and proximate cause of Defendants professional negligence in calculating existing and available air space, IWS has incurred damages in an amount to be proven at the time of trial but in no event less than 3 million dollars for economic and monetary losses associated with negotiated diminished value of the landfill.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for an award of judgment in its favor and against Defendants in the following particulars:

1. For economic damages according to proof at trial;
2. For prejudgment interest to the full extent permitted by law;
3. For costs of suit; and
4. For such other and further relief as the court may deem just and proper.

Dated this 7th day June, 2021.

                                        Respectfully submitted,

                                        /s/ Richard A. Cummings

                                           Richard A. Cummings